## Joel L. Rowley v. George W. Stray and another.

*Statute of descents: Designated relatives: Preferred classes: Degrees of kindred.* Our statute of descents (*Comp. L. 1871*, § *4309*) having classified heirs by a designation of relationship instead of by computation of degrees of kinship, it is only when no persons are found answering to the designation that resort is had to the computation; and when under the statute an estate passes to designated relatives, it does so because of the particular relationship, and not because the persons who take are of kin to the intestate within any certain degree measured by some arbitrary standard or mode of computation.

*Statutes of descent: Brothers and sisters: Half-blood.* When the statute of descents mentions brothers and sisters generally, those of the half-blood are included.

*Law of descents: Designated classes: Exclusion of the half-blood: Statute construed.* The provision of statute (*Comp. L. 1871*, § *4313*) that "kindred of the half-blood shall inherit equally with those of the whole blood in the same degree, unless the inheritance came to the intestate by descent, devise or gift of some of his ancestors, in which case all those not of the blood of such ancestor shall be excluded from such inheritance," if understood as a qualification of the whole statute of descents, must be applied distributively to each of the designated preferred classes, and as

designed to favor the whole blood of the particular class only, and not to pass the inheritance over to a subsequent class so long as any of the preferred class remain; and the half-blood are only excluded when there are others in the same statutory class who are to be preferred by reason of being of the blood of the ancestor from whom the estate came to the intestate.

*Law of descents: Half-blood: State policy.* It has always been the general state policy of Michigan to put the half-blood on a footing of equality in most respects with the whole blood in the law of descents, a discrimination against the half-blood being the exception; and such a discrimination, therefore, is not to be extended by construction beyond the obvious intent.

*Descent of property: Ancestral estate: Blood of the ancestor: Father's mother: Brothers and sisters of the half blood.* Where an intestate who had inherited his estate from his father left as his nearest surviving kindred his father's mother and the children of his mother's second marriage, the brothers and sisters of the half-blood take, under our statute of descents, in preference to the father's mother, notwithstanding the latter is of the same degree of kinship to the intestate with the former, computed by the rules of the civil law, and is of the blood of the ancestor from whom the estate came to the intestate, while the former are not.

*Heard April 22 and 23.     Decided April 30.*

Case made from Branch Circuit.

*Loveridge & Barlow,* for plaintiff.

*Upson & Thompson,* for defendants, cited, among other cases, Aldridge v. Montgomery, 9 Ind., 302; Smith v. Smith, 23 Ind., 202; McMakin v. Michaels, Ibid., 462; Beebee v. Griffing, 14 N. Y., 235; Wheeler v. Clutterbuck, 52 N. Y., 67; Den v. Urison, 2 Pennington, 154; Den v. De Hart, Ibid., 363; Den v. Jones, 3 Halst. (N. J.), 340; Cresoe v. Laidley, 2 Binn., 279; Baker v. Chalfant, 5 Whart., 477; Danner v. Shissler, 7 Casey, 289; Shippen v. Izard, 1 S. & R., 222; Beran v. Taylor, 7 S. & R., 397; Gardner v. Collins, 2 Pet., 58; Cole v. Batley, 2 Curtis, 562; Smith v. Smith, 4 R. I., 1.

COOLEY, J:

The controversy in this case concerns the title to a parcel of land formerly owned by David Mann, and which on his death passed under the statute of descents to David Al-

bert Mann, his only child.   The mother of David Albert
survived her husband, and subsequently married a second
time.    Of this marriage four children were born, of whom
the plaintiff is one.    The mother died in 1859.    David Al-
bert died intestate, and without having married, March 23,
1864.   His nearest surviving kindred were his father's mother,
Polly Mann, and the children of his mother's second mar-
riage.    David Albert died seized of the land in controversy,
and Polly Mann, claiming to be his heir at law, gave à deed
thereof to Peter I. Mann, under whom defendants hold pos-
session.   And the question in the case is whether the father's
mother, or the brothers and sisters of the half blood, inher-
ited this estate.

The statute of descents, so far as it affects the present
case is as follows:

" (4309).  When any person shall die seized of any lands,
tenements or hereditaments, or of any right thereto, or en-
titled to any interest therein in fee simple, or for the life of
another, not having lawfully devised the same, they shall
descend subject to his debts, in manner following:

"*First*, In equal shares to his children, and to the issue
of any deceased child by right of representation; and if
there be no child of the intestate living at his death, his
estate shall descend to all his other lineal descendants; and
if all the said descendants are in the same degree of kin-
dred to the intestate they shall share the estate equally; oth-
erwise they shall take according to the right of representation;

"*Second*, If he shall leave no issue, his estate shall de-
scend to his widow during her natural lifetime, and after
her decease to his father; and if he shall leave no issue or
widow, his estate shall descend to his father;

"*Third*, If he shall leave no issue, nor widow, nor father,
his estate shall descend in equal shares to his brothers and
sisters, and to the children of any deceased brother or sister
by right of representation:  *Provided*, That if he shall leave
a mother also, she shall take an equal share with his broth-
ers and sisters;

"*Fourth,* If the intestate shall leave no issue, nor widow, nor father, and no brother nor sister, living at his death, his estate shall descend to his mother, to the exclusion of the issue if any of deceased brothers or sisters;

"*Fifth,* If the intestate shall leave no issue, nor widow, and no father, mother, brother, nor sister, his estate shall descend to his next of kin in equal degree, excepting that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor shall be preferred to those claiming through an ancestor more remote : *Provided, however,*

"*Sixth,* If any person shall die leaving several children, or leaving one child and the issue of one or more other children, and any such surviving child shall die under age, and not having been married, all the estate that came to the deceased child by inheritance from such deceased parent shall descend in equal shares to the other children of the same parent, and to the issue of any such other children who shall have died, by right of representation;

"*Seventh,* If at the death of such child who shall die under age, and not having been married, all the other children of his said parent shall also be dead, and any of them shall have left issue, the estate that came to said child by inheritance from his said parent shall descend to all the issue of other children of the same parent; and if all the said issue are in the same degree of kindred to said child, they shall share the said estate equally, otherwise they shall take according to the right of representation;

"*Eighth,* If the intestate shall leave a widow and no kindred, his estate shall descend to such widow;

"*Ninth,* If the intestate shall leave no widow nor kindred, his estate shall escheat to the people of this state for the use of the primary school fund."

A subsequent section provides:

"(4313). The degrees of kindred shall be computed according to the rules of the civil law, and kindred of the half-blood shall inherit equally with those of the whole

blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

The plaintiff claims that, as the intestate left surviving him neither issue, nor widow, nor father nor mother, the land, under the third subdivision of § *4309,* descended to the brothers and sisters; and, although it was ancestral estate, yet, as there were no brothers or sisters of the whole blood, this circumstance becomes immaterial, and those of the half-blood must inherit.　On the other hand, the position of the defendants is, that as the father's mother and the brothers and sisters of the half-blood all stand to the deceased in the same degree of relationship computed by the rules of the civil law, and as the latter are not of the father's blood, they are excluded by the express terms of § *4313,* and the father's mother becomes sole heir.　And this position would seem to be impregnable if descent under the facts of this case is to be determined on a computation of the degrees of kinship.

It is very evident, however, that the statute has classified heirs by a designation of relationship instead of by computation of degrees of kindred, and that it is only when no persons are found answering to the designation that resort is had to the computation.　The descent,—saying nothing of representation of deceased persons who if living would have been heirs,—is: *first,* to children; *second,* to the widow and father, if any; *third,* to brothers and sisters and the mother; *fourth,* to the mother, when there is neither issue, widow, father, brother or sister; and when none are found in either of these classes, then, *fifth,* to the next of kin in equal degree under the rules which the statute lays down.　It is obvious from this statement that when under the statute an estate passes to designated relatives, it does so because of the particular relationship, and not because the persons who take are of kin to the intestate within any certain degree, measured by some arbitrary standard or mode of computa-

tion. A computation of degrees is not resorted to at all in this case, and if it were to be applied, it would in some cases change the order of descent very materially. One's child is no nearer of kin to him than his mother; though by the statute he is two degrees nearer in the line of descent; and the same may be said of a grand parent as compared with a brother or sister; each being related to the propositus in equal degree, but the former being two removes further off in the line of descent marked out by the statute. It is therefore manifest that the general intent of the statute is not that the descent shall be governed by nearness in blood to the intestate; favored classes are designated, and it is only when these fail that resort is had to computation of degrees of kindred. And as these favored classes include the children and their descendants, the widow, the father and mother and brothers and sisters, the happening of a case where these all fail is quite exceptional, and leaves the provision for finding the heir by a computation of degrees of kindred as one merely for the contingency when the classes whom it is the policy of the statute to favor are found wholly to fail.

There being in this case neither issue nor widow, nor father nor mother, the case is within the very words of the third subdivision of § *4309*, and the brothers and sisters must take unless this provision is qualified by some other. It is conceded that when brothers and sisters are mentioned, the half-blood are included, and so are the authorities: *Gardner v. Collins*, 2 *Pet.*, *58*; *Baker v. Chalfant*, 5 *Whart.*, *477*; *Clay v. Cousins*, 1 *Monr.*, *75*; *Clark v. Sprague*, 5 *Blackf.*, *412*; *Beebee v. Griffing*, 14 *N. Y.*, *235*. The only provision which defendants rely upon as qualifying this is that contained in § *4313*, that "kindred of the half-blood shall inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance."

This provision, it is insisted, qualifies the whole statute, and excludes the half-blood from participation in ancestral estates in every case where kindred of equal degree and of the blood of the ancestor are found.

If this construction is sound, it is difficult to understand why a grandparent who is to exclude the brothers and sisters of the half-blood from the inheritance should not participate with brothers and sisters of the whole blood, or why the mother should not share the estate with the child. The only answer to such a suggestion is, that the descent is not made to depend on nearness of kindred, but on a statutory classification. But this answer is quite conclusive. It is only when a preferred class fails entirely that we are to look further to ascertain who in that contingency is to become the heir. And it is only when all the preferred classes fail that a computation of degrees of kindred becomes necessary.

In the present case the preferred class having living representatives proves to be that which embraces brothers and sisters. If the estate were not ancestral, those of the whole and of the half-blood would take equally. Being ancestral those of the half-blood would be excluded if there were any of the whole blood to take; but as there are none, there can be no exclusion. If we understand § *4313* as a qualification of the whole statute, then we must apply it distributively to the several subdivisions of § *4309*, and so applied it can mean no more than this: that when the inheritance falls to a certain designated class of persons, these will share it equally unless the estate was ancestral, in which case the half-blood not of the blood of the ancestor shall be excluded. The exclusion goes no farther. It favors the whole blood of the particular class only, and does not pass the inheritance over to a subsequent class so long as any of the preferred class remain.

We have examined the several New York, New Jersey, Rhode Island, Pennsylvania and Indiana cases cited on behalf of the defendants, and find nothing in them to qualify the views here expressed. They are not very directly in point, and

are all decided under statutes quite different from that of this state. Ours is but the expression of a general policy which has always characterized our legislation, beginning with the ordinance of 1787, and which a part of the time in all respects, and all the time in most respects, has put the half-blood on a footing of equality with the whole blood in the law of descents.—See *Ordinance of 1787, § 2; 1 Ter. Law, p. 352; 2 Ter. Laws, p. 20; Laws 1833, p. 308; R. S. 1838, p. 208; R. S. 1846, p. 274.* A discrimination against the half-blood is the exception, and is not to be extended by construction beyond the obvious intent. And nothing seems plainer to us than that under this statute, the half-blood are only excluded when there are others in the same statutory class who are to be preferred by reason of being of the blood of the ancestor from whom the estate came to the intestate. This was the view taken by us when *Ryan v. Andrews, 21 Mich., 229* was before us, and further reflection has confirmed us in it.

The judgment must be reversed, with costs of both courts, and judgment entered in this court for the plaintiff. The record will be remitted for any further proceedings.

The other Justices concurred.