†SILAS MAYNARD STONE ET AL. v. PHILIP DOSTER ET AL.

1. PARTITION CASES ARE APPEALABLE.

By the Revised Statutes of 1880, statutory partition (so called) is abolished; the action of partition is a civil action and is appealable.

2. RULES FOR CONSTRUING STATUTES.

In construing words and phrases in statutes, regard is had to the following rules:

1. Regard should be had to the meaning of the same words and phrases in, (a) prior sections of the same act. (b) in prior acts upon the same subject.

2. Where the meaning is doubtful, regard must be had to the ascertained meaning of the words in an act to which the act in question is amendatory.

3. Regard should be had to judicial construction already given by the Supreme Court of the state to the same words or phrases.

4. That all who may be included in a general description or class are to take in equal shares.

5. The spirit or policy of an act must be taken from the words of the act to be construed, and not from conjecture aliunde.

3. BROTHERS AND SISTERS INCLUDE THOSE OF WHOLE AND HALF BLOOD.

Under section 4162 Revised Statutes, the distribution of "one-half to the brothers and sisters of such deceased husband or wife from whom such personal or real estate came," includes brothers and sisters of both the whole and half blood.

Silas Maynard Stone et al. v. Philip Doster et al.—Appeal from the Court of Common Pleas.

Ithiel Stone et al. v. Silas Maynard Stone et al.

Error to the Court of Common Pleas.

BALDWIN, J.

By both of the proceedings above named Ithiel Stone and those interested with him, seek relief from the same judgment of the court of common pleas.

They cannot prosecute both appeal and error, and one of the suits is improperly here.

The original petition was one for partition and a receiver filed by Silas Maynard Stone and his brother and sister, children of Reuben C. Stone, deceased, and who was a brother of the whole blood of Silas S. Stone, deceased, against Philip Doster and other brothers and sisters of the whole blood of Margaretta Stone, deceased, setting forth that Silas S. Stone in his life time was and died seized of a very large amount of real estate in the city of Cleveland, which is described; that he died without children and intestate, leaving Margaretta Stone his widow, who took the same by inheritance; that she thereafter died childless and intestate seized thereof.

It asks a partition of the lands, one-half to the plaintiffs and one-half to the defendants, brothers and sisters of Margaretta Stone.

A portion of these lands are held one-half under the above title and one-half by Worthy S. Streator, trustee, who is made defendant.

Henry C. Ranney, administrator of S. S. Stone, is made defendant under the allegation that without objection and for all he is collecting large rents of the property, and he is asked to account.

In this action Ithiel Stone and others appeared under leave, alleging, in addition to the facts of the petition, that they were brothers and sisters of Silas S. Stone of the half blood, and each equally entitled to share with the plaintiffs, legal representatives of Reuben C. Stone, brother of S. S. Stone of the whole blood, in the premises described, and asking a partition to them of their shares. To this answer and cross-petition the plaintiffs demurred; the demurrer was sustained. and a judgment of dismissal thereon rendered against the new defendants, Ithiel Stone and others.

Ithiel Stone and others appealed to this court and also prosecute proceedings in error.

---

†This judgment was affirmed in part and reversed in part; see opinion, 50 O. S., 495, 525.

So that the first question is, was the case appealable?

We are very clear that it was.

Whatever may have been the rule in partition under the statute specially providing for that action formerly called statutory partition, there can be no doubt about it since the special statutory partition has been abolished by the revision of 1880, since which time all partitions have of necessity pursued the code forms (as did this suit), and all alike have been civil actions.

The sole reason why a statutory partition was not appealable, was because it was not a civil action; Barger v. Cochran, 15 O. S., 460; but even the statutory partition might be turned into a civil action, and be appealed. Stableton v. Ellison, 21 O. S., 527, and other cases. Quite a list of cases show that when a civil action it was appealable, and if it needed any adjudication to say that by the change in the Revised Statutes, all new suits in partition became civil actions, it is supplied by the reasoning of the Supreme Court in Corry v. Lamb, 43 O. S., 390, affirming a previous decision and reasoning of this court in another case to the same effect in an action for dower.

We shall proceed, therefore, to consider the appeal case upon the demurrer by plaintiffs to the answer and cross-petition of Ithiel Stone and others.

This raises, and was intended to raise, in a concise, convenient form the construction of sec. 4162, Rev. Stat.

Do the words "one-half to the brothers and sisters of such deceased husband or wife from whom such personal or real estate came," include, in the words "brothers and sisters," both brothers and sisters of the whole and half blood when both classes exist?

The whole section reads:

"When the relict of a deceased husband or wife shall die intestate and without issue, possessed of any real estate or personal property, which came to such intestate from any former deceased husband or wife, by deed of gift, devise or bequest, or under the provisions of sec. 4159, then such estate, real and personal, shall pass to and vest in the children of said deceased husband or wife, or the legal representatives of such children. If there are no children or their legal representatives living then, such estate, real and personal, shall pass and descend, one-half to the brothers and sisters of such intestate or their legal representatives, and one-half to the brothers and sisters of such deceased husband or wife from which such personal or real estate came, or their personal representatives."

The property involved in this question is very large, and has justified the wide range and long arguments of counsel in discussion.

We have listened with interest to the very full collection of dictionary definitions of the word "brother," often defined solely as "a son of the same mother and father," half-brother being defined as if it were a separate word.

There has also been a long discussion of the various statutes of the state for many years, and the supposed policy of the state as to the descent of ancestral and non-ancestral property as among brothers of the whole and half blood.

We are, however, plainly, first and foremost to study as diligently as we can the meaning of the same words when used by the legislature of the state in prior and the same acts.

The claiming plaintiffs, although not brothers and sisters of S. S. Stone, are children of a brother of the whole blood, and under secs. 4166 and 4167, Rev. Stat., stand in the place of their father.

The statute of descent and distribution sometimes uses the term "brothers and sisters," and often qualifies these terms by adding "of the whole blood," "of the half blood," or "of the blood of the ancestor from whom the estate came."

The term "brothers and sisters" appears first in section 4158, where after providing in the third subdivision for "the brothers and sisters of the intestate who are of the blood of the ancestor from whom the estate came, or their legal representatives, whether such brothers and sisters be of the whole or half blood of the intestate," a provision is made, fifth, that in certain contingencies the estate shall pass for life to the husband or wife, relict of an ancestor; "that on the death

of such husband or wife, or if there is no such husband or wife, the estate shall pass to and vest in the brothers and sisters of such ancestors or their legal representatives." That the words "brothers and sisters" in this section mean both of the whole and of the half blood is decided in case of Cliver v. Sanders et al., 8 O. S., 501, the syllabus of which reads:

"Under the 4th (now 5th), subdivision of the first section of the statute of descents of 1835, (Swan's Statutes of 1840, p. 286), the half-brothers and sisters of the ancestor are included in the words "brothers and sisters of such ancestor." That fourth clause became the fifth in the act of 1853, as amended in 1857, (1 S. & C., 501); that the fifth in the act of 1865, (S. & S., 304), and that the fifth clause in section 4157 of the Revised Statutes, with such small changes that it cannot be supposed the meaning of these words was changed. See the Cliver case, and cases therein cited.

In 1869, 19 O. S., 531, 536, in White v. White, commenting on the act of 1857 (1 S. & C., 501), the court says, "That the term 'brothers and sisters' as used in the fifth clause of the act, comprehends half-brothers and half-sisters, was directly decided in Cliver v. Sanders, 8 Ohio St., 501." The next place where the term 'brothers and sisters' occurs, without being limited by further words, is in sec. 4161, Rev. Stat., declaring when real estate shall pass to the children of a former husband or wife etc., and when to escheat. If there are no children or their legal representatives living to take, "then the estate shall pass to the brothers and sisters of any such husband and wife or their legal representatives."

This act, so phrased, first came to the statutes in 59 O. L., 50, amending section three of the act found in Swan & Critchfield, page 502.

Now, section 1 of that very act (clause 4), was the one (as shown above, and stated in White v. White, 19 O. S., 536), where in 1858, by a well known case, the Supreme Court had said "brothers and sisters," unlimited by other words, meant and included both the whole and half-blood.

Can there be any doubt that in passing the act (59 O. L., 50), in 1862, and using the same words in amending that very act, they used them in the same sense? The next and only other place where these same words are used in a manner similarly unlimited is the section 4162, in controversy.

As the Legislature have always been, and so repeatedly, careful to limit the words brothers and sisters, when they wished it done, by "of the whole blood" or "of the half blood" or " of the blood of the ancestor from whom the estate came," it would seem, *prima facie,* that the legislature, with the other uses of the word in the statute of descent defined by the supreme court directly before them, must have intended the definition already given the words by the supreme court. It certainly would seem to need argument to show that the words here had a new meaning, and one contrary to the supreme court definition.

But it is said that the same meaning should be given to the words "brothers and sisters" there used as in the statute when first adopted, and that the law and this act were then such as to force the conclusion that the whole blood first takes.

Counsel for plaintiffs endeavor to get rid of the force of the use of the term "brothers and sisters" in other parts of the act by the claim that the act of 1877 was supplemental to the second section only of the act of 1853, and that it is improper to look at other sections to find what words mean. The title of the act of 1877, reads otherwise, "An act supplementary to the act entitled 'An act regulating descents and the distribution of personal estates,' passed March 14, 1853, (S. & C. 501), and to the various acts amendatory thereof," (74 O. L., 81.)

But, say counsel, in the body of the act it is said to be supplementary to section two only. It was necessary to the taking effect of the act of 1877, and so stated, that the property should have come to the intestate under section two—the section provides solely for persons "possessed of any real estate or personal property which came to such intestate from any former deceased husband or wife under the provisions of the second section of this" (meaning the) "act, to which

this act is supplementary;" but the grammar is, the act to which this is supplementary; not the section to which this act is supplementary. In fact, before this act of 1879 the second section of the act named of 1853 had been repealed and replaced by an amendatory act of 1857.

The acts referred to in the title include the instances before referred to of the use and construction of the words brothers and sisters. But it is said that in fact it was supplemental to section two only, as it concerned only a case arising under it, and that the words "brothers and sisters" should be construed according to the policy of the Legislature in section two, now 4159, and as if it read:

First (as in third of 4159), to the brothers and sisters of the whole blood; and,

Second, if there are none, to brothers and sisters of the half blood (as in fourth clause of sec. 4159).

We do not think that such a presumption is called for. The legislature passed the act of 1877, to change 4159, for under Brower v. Hunt, 18 O. S., 311, the third clause of 4159 would have given the estate in the case at bar to the brothers and sisters of the whole blood of Margaretta Stone, the intestate.

There is no presumption then that section 4159 was to stand, nor any reason why we should not fairly estimate the change by the words used in making it. The attention of the legislature could not have failed to be called to the continual use and effect of the phrases, "brothers and sisters," "brothers and sisters of the whole blood" and " brothers and sisters of the half blood." To say also that brothers and sisters or their legal representatives should be read to mean brothers and sisters of whole blood, and, if there are none, to brothers and sisters of the half blood, violates one of the cardinal rules of construction, that when an estate goes to a class of persons each of the class take. This contention abandons the claim that the half blood are not brothers and sisters, for they can not take at all unless they are.

Says Shaw, C. J., in Knapp v. Windsor, 7 Cush., 157, in construing a statute of descents:

"It is a plain rule of law that those who take property as a class of persons described, where there is nothing in the law making the appropriation to distinguish their respective rights, take in equal shares."

"It may be generally stated," says Mr. Washburn, "that in this country, whenever two or more persons acquire the same estate by the same act, deed or demise, and no indication is therein made to the contrary, they will hold as tenants in common." Washburn on Real Estate, 416, Boone on Real Property, S. 358.

The same inference would arise from Clayton v. Drake, 17 O. S., 367, in construing "next of kin," where the court denied legal representation, there being no statute expressly giving it. The court says: "These words describe a class of persons to be ascertained by the rules of law, and when ascertained, the words become as definite and specific as the words 'children or brothers and sisters.'"

The use of the same words in the same act, and even in the original act of 1877, in an act supplementary to the prior act, where the same words are used, is a very strong reason for believing they were used in the same sense. This is a primary rule of construction.

In Raymond v. Cleveland, 42 O. S., 522, 529, the court says:

"Where the meaning of a word or phrase is doubtful, but the meaning of the same word or phrase is clear where it is used elsewhere in the same act, or an act to which the provision containing the doubtful word or phrase has reference, the word or phrase in the obscure clause will be held to mean the same thing as in the instances where the meaning is clear."

Said the court in Norris v. State, 25 O. S., 224, deciding the meaning of "any other person" laying down a "rule of construction":

"That where a clause susceptible of two meanings, is used in a statute which has received a judicial construction, and the same clause is used in a subsequent statute upon the same or an analogous subject, it is to be understood in the latter in the same sense as in the former, unless the object to which it is applied, or the connection in which it stands, requires it to be differently understood in the two statutes."

In The Abbotsford, 98 U. S., 440, the United States Court say:

"When words in a previous act have acquired their judicial interpretation and definite meaning, they will, when used in a subsequent act, be presumed to be used in the same sense."

So in Claflin v. Commonwealth Ins. Co., 110 U. S., 81. The court, Mr. Justice Matthews, say:

"After this court has construed relative provisions in different parts of the statute, and Congress then makes a new enactment of the same subject matter, with provisions bearing like relations, they must be construed in the same way."

See also Rhodes v. Weldy, 46 O. S., 234; Johnson v. Johnson, 31 O. S., 131; Turney v. Yeoman, 16 O. S., 24 and Grogan v. Garrison, 27 O. S., 50, 63. The authorities may be found abundantly in the text-books that the old maxim "*noscitur a sociis*" is emphatically to be applied to a question like the present. Brown on Legal Maxims, marginal page 456. Bishop on Interpretation of Statutes, sections 96 and 97. Robbins v. Railroad Co., 32 Cal., 472. Endlich on Interpretation of Statutes, sections 307 and 370.

It is claimed that there is some general policy of the legislatures of the state that should influence the decision. We know of no such general policy that should change a construction otherwise plain. Many legislatures have made changes. Successive legislatures are composed of many men of many minds. We think no such policy is manifest, and if it were, it would be a very unsafe guide.

In Brower v. Hunt, 18 O. S., 312, our Supreme Court, quoting the Supreme Court of the United States (2 Peters 93), says:

"What the legislative intention was, can be derived only from the words they have used, and we cannot speculate beyond the reasonable import of the words. The spirit of the act, must be extracted from the words of the act, and not from conjecture *aliunde*." Also Davis v. Justice, 31 O. S., 359, 367.

And in 5 Wallace 111, Justice Field says:

"What is termed the policy of the government with reference to any particular legislation is generally a very uncertain thing upon which all sorts of opinions, each variant from the other, may be formed by different persons. It is a ground much too unstable upon which to rest the judgment of the court in the interpretation of statutes."

Said Chief Justice Denman, in Queen v. Com'rs of the Poor, 6 A. & E. 68-9:

"We disclaim altogether the assumption of any right to assign different meanings to the same words in an act of Parliament on the ground of the supposed general intention of the act."

It may indeed be thought that in adopting the language used, the legislature had in direct view the fifth clause of sec. one, now Rev. Stat. 4158, where the words in question were construed in 8 O. S. There the property was ancestral, and the contingency to be provided for was, as here, the death of a surviving husband or wife. There the surviving husband or wife took but a life estate, here in fee; there the remainder after the life estate went to the brothers and sisters (both bloods) of the ancestor of the last intestate holding the fee. The husband here was not the ancestor, but was the person from whom, under the statutes of descent, the last intestate in fee took the estate. In both instances the estate, at least one-half, is given to the brothers and sisters of the person from whom the last intestate in fee took the estate. There is also a perfect analogy in the act of 1877 to the third section of the prior act. That provided for such a case as would exist if Margaretta Stone left no heirs or next of kin, and in that contingency it gives the estate to the brothers and sisters of the deceased husband from whom she took it. In the act of 1877, although she had heirs or next of kin, the legislature disposes of one-half the estate as if she had none, to-wit, to the brothers and sisters of the deceased husband from whom she took it.

It being determined by the act of 1877 to take away half the estate from the heirs or next of kin of Margaretta Stone, how can that disposition of it be said to

Vol. III C. C.   41.

be contrary to the policy of the act, when it was the identical disposition already provided by the acts to which this was a supplement, if there had been no such heirs or next of kin?

The policy of each legislature is to be determined by what it says, and when it passes an amendment or supplement, there is no presumption that it did not intend to change the law. There would be little work for legislatures if they did not change laws.

Nor does it appear, as above argued, that there is any policy antagonistic to our construction of the statute, and possibly as far as the half in contention is concerned, if any policy, one in favor of our construction.

But if a policy is to be sought, the opinion in the case of Clayton v. Drake et al., 17 O. S., 368, may be read with profit. The syllabus says:

"In ascertaining the next of kin to the intestate" mentioned in the sixth clause of the same section (now 4158) "the degrees of consanguinity are to be computed according to the rule of the civil law;" and these are the grounds stated on page 372 of the opinion:

"There are two modes of computing the degree of kindred; one according to the canon law, and the other by the rules of the civil law. On the subject of descents the common law of England adopts the former mode of computation, which the plaintiffs claim to be followed in this state. But we think it is clearly otherwise, and that the rule of the civil law is the common law of this country in the computation of kindred."

The court proceed to show that the first statute of descents in this state adopted the civil law, and proceed to adopt it themselves for the definition of terms used by the legislature.

And that by the civil law the brothers and sisters of the whole and half blood were both equally entitled as brothers and sisters, appears in the Cliver case, 8 O. S., 506, where Swan, C. J. says:

"The law of England recognizes brothers of the whole and half blood to be of-kin in the degree of brothers. Such seems also to be the rule of the civil law, and has been generally adopted in this country."

The ordinance of 1787 expressly provides "there shall in no case be a distinction between kindred of the whole and half blood." Legislatures have made distinctions since, but unless they do, the courts do not. See 13 O. S., 21, 35-37, Drake v. Rogers, and remarks of Swayne, J., in Bates v. Brown, 5 Wall., 716-718.

A fair share of the dictionaries define brothers and sisters as children of the same parents, some as children of the same parents or parent. We think that in common use the words brothers and sisters include both; it being usual to say whole or half-brother when meaning to define more closely.

We think that our statute of descents and distribution shows that the legislature has consistently and carefully done the same, using the terms "brothers and sisters" for all, and to separate into classes the terms "brothers and sisters of the whole blood," "brothers and sisters of the half blood," and that the supreme court of the state, whenever appealed to, have sustained such construction. The legislature, the supreme court, and usage in Ohio, have defined the terms as we define them. We think the courts generally have done the same.

In the Cliver case, 8 O. S., 501, the supreme court cited and relied upon: Crooke v. Watt, 2 Vernon, 124, which case was affirmed by the House of Lords; Gardner v. Collins, 3 Mason, 403; 2 Peters, U. S., 58; Clarke v. Sprague, 5 Blackford, 412; Sheffield v. Lovering, 12 Mass., 490.

Says the court in the Cliver case:

"Under the decisions above referred to, half-brothers of an ancestor are included in and designated by brothers whenever that term is used without limitation."

We understand the great weight of authority since to be the same way.

In the case of Prescott v. Carr, 29 N. H., 453 (61 Am. Dec. 652), the court approve "the general doctrine that independent of express statutory enactment no distinction is admitted between the whole and half bloods," and such was the construction in that case of "brothers and sisters." There follows in the notes a copious collection of authorities as follows:

"Meaning of 'brothers and sisters,' 'next of kin,' etc. There is almost uniformity of opinion that where a statute provides for the inheritance of 'brothers and sisters,' the term includes the half blood. Gardner v. Collins, supra; Sheffield v. Lovering, 12 Mass. 490; Rowlay v. Stray, 32 Mich., 70, 75; Cliver v. Sanders, 8 O. S., 501; White v. White, 19 Id., 531, 536; Clarke v. Sprague, 5 Blackf., 512; Doe ex dem. Moore v. Abernathy, 7 Blackf., 442; Aldridge v. Montgomery, 9 Ind., 302; Clay v. Cousins, I. T. B. Mon., 75; Marlow v. King, 17 Texas, 177; Prescott v. Carr, 29 N. H., 453; but the opposite conclusion was reached in South Carolina in Wren v. Carnes, 4 Desau, 405; Lawson v. Perdriaux, 1 McCord, 456, in construing the amendment of 1797 to the act of 1791, relating to descents and distributions."

Other cases are Beebe v. Groffing, 14 N. Y., 235, where the court say of the other cases:

"These decisions coincide with the popular sense of the words used, and are an additional argument in favor of the adoption of this meaning."

In Clay v. Cousins, I. T. B., Monroe, 75, the estate of Henry Clay passed from his son, Thomas C. Clay, to the half-brother of Thomas C., Samuel W. Cousins, the court saying "he is the child of Thomas C. Clay's mother, and is emphatically Thomas C. Clay's brother."

Tracy v. Smith, 2 Lev., 173. In Rowlay v. Stray, 32 Mich., 72, Cooley, J., affirming this rule, cites in addition: Naker v. Chalfant, 5 Wharton, 477; Shull v. Johnson, 2 Jones Eq., 202; Luce v. Harris, 79 Penn. St., 432; Wood v. Mitchell, 61 How., Pr., 48.

In State v. Wyman, 59 Vt., 527, it was held that in crime (incest) "brother" included half-brother. See also Hawkins on Wills, page 86*. "Though Johnson's Dictionary defines "brother" as one "born of the same father and mother," it is settled as a point of construction that rules. A gift to "brothers" or "sisters" includes half-brothers and half-sisters. So a gift to nephews or nieces includes the children of a half-brother, or half-sister. See Leviticus XVIII, 9v., "Thy sister, the daughter of thy father or the daughter of thy mother." See 2nd Jarman on Wills, 700, 154* Edition of 1880. Schouler on Wills, sec. 536. 2 Redfield on Wills, 72, 73 and 903.

We are aware that another branch of the circuit court for which we have great respect, has come to a different conclusion from ours in the case of Martin v. Falconer, *ante* 286; but that was by a divided court, and the case may not have been as fully presented or examined. Even in that case Shauck, Judge, delivering the opinion, says:

"Although some lexicographers, having in mind only the usual relation, having defined brothers and sisters to be off-spring of the same parents, other authoritative definitions, the common use of the words by the educated, and judicial decisions, make it clear that brothers and sisters, though of the half-blood only, are brothers and sisters, and our statute of descents makes provision for 'brothers and sisters of the half-blood.'"

But it is said that if under section 4162, the one-half passes to all the brothers and sisters of the former husband, the other half will, by use of similar language, pass to all the brothers and sisters of the intestate, leading to the conclusion that if the intestate leaves real estate acquired by purchase, it passes, under clause third of sec. 4159, to his or her brothers and sisters of the whole blood, while if it came from a former husband or wife, the one-half goes to all the brothers and sisters of the whole and half blood.

This construction can only follow from the necessity of giving the same meaning to the same words upon the arguments before adduced—and if it follow that if the brothers and sisters of the former husband or wife includes half blood, the brothers and sisters of the intestate also includes half blood, the former arguments are good.

The cases are not quite alike, as before 1877 there was no provision at all for the brothers and sisters of the deceased husband or wife, and in a new provision for them, there was no old one to change or modify; but there was no reason why, on the policy of England, the United States, and nearly every state, including Ohio, the legislature should not have intended a similar construction in the act of 1877, to the words "brothers and sisters of such intestate." If by the language they intended such a change in the descent, they came more nearly to the civil law, which is the general and best approved rule. But if by accident or carlessness the legislature changed the order of descent of the one-half going to the heirs of the intestate, such accident or carelessness should not change the direction of

the other half, which was an entirely new direction expressed in the precise language already used in the statute, and well understood.

The demurrer of the plaintiffs to the answer and cross-petition of Ithiel Stone and others will be overruled.

Russell & Rice and George C. Carlisle, for S. M. Stone et al.

Boynton, Hale & Horr, for Ithiel Stone et al.

Squire, Sanders & Dempsey, for Philip Doster et al.