[S. F. No. 10167. In Bank.—January 5, 1923.]

In the Matter of the Estate of CHARLES MORTIMER BELSHAW, Deceased. ELIZABETH OXNER CLARK et al., Plaintiffs and Appellants, v. BERT OXNER et al., Defendants and Appellants; VIOLETTA H. PURCHASE, Defendant and Respondent.

[1] ESTATES OF DECEASED PERSONS — SUCCESSION — PROPERTY IN-HERITED FROM MOTHER — HALF-SISTER ON FATHER'S SIDE — CON-STRUCTION OF CODE.—Under subdivision 5 of section 1386 of the Civil Code a half-sister of the deceased father of a person dying intestate and in the third degree of relationship is entitled to succeed to the portion of the estate which such intestate inherited from his mother in preference to cousins of the whole blood of a more remote degree, since the exception in section 1394 of such code excluding kindred of the half blood in favor of kindred of the whole blood, where the former are not of the blood of the ancestor from whom the estate came by descent, devise or gift is operative only when there are kindred of the whole blood of the same degree as the kindred of the half blood.

[2] ID. — HALF-SISTER OF FATHER OF INTESTATE — KINDRED OF THE
HALF BLOOD.—A half-sister of decedent's father, having one an-
cestor in common with decedent, is a kindred of the half blood.

APPEAL from a judgment of the Superior Court of
Contra Costa County. R. H. Latimer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Gerald C. Halsey and Frederick T. Leo for Plaintiffs
and Appellants.

Charles M. Peck, Henry C. McPike and F. P. Webster
for Defendants and Appellants.

M. R. Jones, Creed, Jones & Dall and W. K. Powell for
Respondent.

LAWLOR, J.—This is a proceeding in the nature of an
action to determine heirship, under section 1664 of the
Code of Civil Procedure, in the matter of the estate of
Charles M. Belshaw, deceased, who died on November 23,
1919. A testamentary disposition of all his property to
his first wife having failed because of her death before
his own, his estate is to be distributed according to the
rules of succession applicable to cases of intestacy.

Mortimer W. Belshaw, decedent's father, died April 28,
1898, and his estate was distributed one-half to his wife,
Jane E. Belshaw, and one-half to decedent. Jane E. Bel-
shaw died June 26, 1900, whereupon the property she had
inherited from Mortimer W. Belshaw also passed to dece-
dent.

The sixteen plaintiffs and defendant Burton J. Oxner are
second cousins of decedent, in the sixth degree of relation-
ship to him. They are descendants of three sisters and
two brothers of Conrad Oxner, decedent's maternal grand-
father. Defendant Violetta H. Purchase, formerly Violetta
Belshaw, is a half-sister of Mortimer W. Belshaw, decedent's
father. She is a daughter of Mortimer W. Belshaw's father
by a second wife and is in the third degree of relationship
to decedent. The other ten defendants are descendants of
two sisters of Mary Rhodes, decedent's paternal grand-

mother, who was the mother of Mortimer W. Belshaw, but not of Violetta H. Purchase. These defendants are cousins of decedent in the fifth, sixth and seventh degree of relationship.

The trial court found that "defendant Violetta H. Purchase is a kindred of the third degree to Charles Mortimer Belshaw, deceased, on the paternal side and that said Violetta H. Purchase is the sole heir at law of said Charles Mortimer Belshaw, deceased." From judgment entered pursuant thereto plaintiffs and all the defendants except Violetta H. Purchase appeal.

It is conceded by all the parties that the distribution of the estate is to be governed by subdivision 5 of section 1386 of the Civil Code, which provides: "If the decedent leaves neither issue, husband, wife, father, mother, brother, nor sister, the estate must go to the next of kin, in equal degree, excepting that, when there are two or more collateral kindred, in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote." The principal question presented on this appeal is whether respondent, Violetta H. Purchase, being a half-sister of decedent's father, is precluded, under section 1394 of the Civil Code, from inheriting that portion of decedent's estate which came to him from his mother. That section is as follows: "Kindred of the half blood inherit equally with those of the whole blood in the same degree, unless the inheritance come to the intestate by descent, devise, or gift of some one of his ancestors, in which case all those who are not of the blood of such ancestors must be excluded from such inheritance." Violetta H. Purchase is not of the blood of decedent's mother, Jane E. Belshaw.

[1] Appellants contend the second clause of section 1394, the portion following the word "unless," applies to all cases wherein next of kin of the half blood claim the property which has come to a decedent from an ancestor not of the blood of the claimants and that its effect is to exclude such kindred from the inheritance. Respondent's position is that the second clause is operative only when there are kindred of the whole blood of the same degree

as the kindred of the half blood and that kindred of the half blood inherit such property in preference to those of the whole blood of more remote degree.

*Estate of Smith*, 131 Cal. 433 [82 Am. St. Rep. 358, 63 Pac. 729], is cited by respondent as determining this proposition in her favor. In that case the deceased, who died intestate, inherited the property distributed from her father. She left surviving her, her husband and two half-sisters on the mother's side. It was decided the half-sisters were entitled to share the estate with the husband under the provisions of subdivision two of section 1386 of the Civil Code. The court held that the word "unless" should be given the same meaning as "except" and that the last clause "can, therefore, apply only to the class described in the first, or, in other words, to the class from which it constitutes an exception, which is, kindred 'in the same degree'" and that "The effect of the provision is therefore simply to subdivide each of the classes as determined by degree of relationship into two classes, namely, those of the full and those of the half blood, and in each class to postpone the latter to the former."

Appellants insist the decision in that case should not be followed for the reason that it placed a wrong interpretation on section 1394, and it is further claimed the remarks concerning that section were *obiter dicta*. Exhaustive arguments are presented for the purpose of showing wherein the court erred in arriving at the conclusion therein announced, it being contended by appellants that the natural and ordinary meaning of section 1394 is that it should apply to all cases where estates are claimed by kindred of the half blood; that the second clause contains a declaration of a general policy of exclusion of the half blood from ancestral property and not a rule to be applied to an unusual state of facts, as when there are kindred of the half blood and whole blood in the same degree; that the construction contended for by appellants is in harmony with the provisions of the statute regulating succession wherever attention is given to the source of a decedent's title, such as subdivisions six and seven of section 1386; that the construction placed on the section by respondent limits the application of the second clause to cases where there

are kindred of the whole blood and of the half blood in the same degree, without a corresponding limitation of the first clause, that is, it allows kindred of the half blood to inherit the property in the first place without the existence of others of the whole blood in the same degree. It is stated that "Wherever the first clause of section 1394 authorizes the half blood to take, the second clause excludes the half blood not of the blood of the ancestor from taking ancestral property" and that respondent's "only hope is that the first clause enables her to take as next of kin without limitation, and that a restricted application be given to the second clause confining it to the next of kin 'in the same degree.' "

After a careful consideration we are of the opinion we must adhere to the decision in *Estate of Smith, supra.* It may first be said the statements therein construing section 1394 were not *obiter dicta.* It was necessary in that case to determine whether section 1394 excluded all kindred of the half blood not of the blood of the ancestor from inheriting ancestral property, for if such were its effect, the half-sisters of the decedent in that case would have received nothing, notwithstanding they were within a class mentioned in section 1386 as entitled to inherit. In order to decide whether or not it had such an effect, the court was required to interpret the section in order to determine whether it applied in that case.

The court there adopted the interpretation placed upon similar statutes by the supreme court of Michigan in *Ryan* v. *Andrews,* 21 Mich. 229, 234; *Rowley* v. *Stray,* 32 Mich. 70, and by that of Indiana in *Robertson* v. *Burrell,* 40 Ind. 328, 336. Two cases reaching contrary conclusions, *Perkins* v. *Simonds,* 28 Wis. 90, and *Kelly's Heirs* v. *McGuire,* 15 Ark. 555, were distinguished, it being stated that subsequently the former was in effect overruled. An extended discussion of those cases and the merits of the court's comments concerning them is unnecessary. The question presented here has arisen in several other jurisdictions under statutes having the same general effect as section 1394 of the Civil Code. Such statutes are usually regarded as enabling laws, conferring on kindred of the half blood a right not theretofore enjoyed to inherit equally with those of the whole blood,

those of the half blood being excluded from the inheritance at common law. (1 Cooley's Blackstone, 4th ed., p. 614.) In a majority of decisions the courts have construed the exception referring to ancestral property as excluding in every case all kindred of the half blood not of the blood of the ancestor, the construction favored by appellants. (*Perkins* v. *Simonds, supra; Kelly's Heirs* v. *McGuire, supra; Den* v. *Searing,* 8 N. J. L. 340; *Conkling* v. *Brown,* 57 Barb. [N. Y.] 265, 276; *Amy* v. *Amy,* 12 Utah, 278 [42 Pac. 1121]; *Cox* v. *Clark,* 93 Ala. 400 [9 South. 457], wherein it was held that, but for a special provision not contained in the other statutes, the court would have held all kindred of the half blood excluded; *Cutter* v. *Waddingham,* 22 Mo. 206; *Rotenbach* v. *Young,* 119 Misc. Rep. 267, 196 N. Y. Supp. 220.) But in the case of *Ryan* v. *Andrews, supra,* it was said: ''The obvious and natural connection of the various provisions would confine the operation of the rule of exclusion to those cases where there is more than one person in the same degree of kinship, and where they are not all relatives of the blood of the ancestor from whom the estate is derived. This construction gives the property in all cases to the nearest kindred, but excludes such as are not of a particular stock. It avoids the incongruity of passing over near kindred for those who are remote, and satisfies all the words of the section, while it prevents very serious mischiefs.

''We think, therefore, that under the statute the estate can, under this section, never go to any one else but the nearest of kin, according to the degrees of the civil law. If there is but a single next relative, he or she will take the whole estate without reference to whether the kindred is on the side of the one parent or the other. If there are several next of kin, and they are not all related on the same side, then only such of them will take as are of the blood of the ancestor from whom the estate was derived.'' In *Rowley* v. *Stray, supra,* it was held the statute meant that ''when the inheritance falls to a certain designated class of persons, these will share it equally unless the estate was ancestral, in which case the half blood not of the blood of the ancestor shall be excluded.''

The latter interpretation was adopted in *Estate of Smith, supra,* and although the weight of authority may be op-

posed to such a construction, it cannot be said it is not without precedent or that it does not give a reasonable effect to the language of the statute. (See, also, *Estate of Pearsons*, 110 Cal. 524 [42 Pac. 960].) We therefore see no cause for overruling that case or departing from its interpretation of the statute, which has become a rule of property. (*Estate of Nigro*, 149 Cal. 702 [87 Pac. 384].)

Appellants attempt to distinguish *Ryan* v. *Andrews, supra,* and *Rowley* v. *Stray, supra,* cited as authority in *Estate of Smith, supra,* on the ground that in *Rowley* v. *Stray, supra,* it was said: "Ours is but the expression of a general policy which has always characterized our legislation, beginning with the ordinance of 1787, and which a part of the time in all respects, and all the time in most respects, has put the half-blood on a footing of equality with the whole-blood in the law of descents. See Ordinance of 1787, Sec. 2; 1 Ter. Laws, p. 352; 2 Ter. Laws, p. 20; Laws 1833, p. 308; R. S. 1838, p. 208; R. S. 1846, p. 274. A discrimination against the half-blood is the exception, and is not to be extended by construction beyond the obvious intent." It is insisted that in this jurisdiction the inclusion of the half blood is an exception, to be strictly construed. There appears to us no distinction between the Michigan case and our own. The statute in question became a part of the law of Michigan through the ordinance of 1787 and the statute now embodied in section 1394 of our Civil Code was first adopted in 1850. (Stats. 1850, p. 221.) The court in *Rowley* v. *Stray, supra,* was speaking of the law of Michigan as it had stood since the adoption of the ordinance of 1787. It cannot now be said there was any difference in the purpose of the adoption of the two statutes, though that of our own state was adopted at a later date than that of Michigan.

It is also contended that public policy favors an interpretation of section 1394 which would insure to a property owner that his estate would descend upon his death to those of his own blood, which would encourage continued exertion on the part of one about to become an "ancestor" within the meaning of the code. However, it must be borne in mind that it is the estate of the decedent, not that of the ancestor, which is being distributed, and that as far as

the ancestor is concerned, his property has descended to one of his own blood, who has had the enjoyment of it for his lifetime. In addition, as pointed out in *Ryan* v. *Andrews, supra,* if the construction asked by appellants were placed upon section 1394, "it would follow that in the absence of paternal kindred the estate would escheat in preference to passing to near kindred on the maternal side, which is also a result not to be needlessly attributed to the legislative intent."

[2] Counsel for the sixteen appellants who were plaintiffs in the trial court advance the argument that respondent is neither of the whole blood nor half blood of decedent and not entitled to succeed to any of his property because she "has the same blood as the father, Mortimer Belshaw, to the extent of one-half. But the father, Mortimer Belshaw, contributed only one-half to the blood of the son, Charles M. Belshaw. Therefore, only one-half of that one-half which was contributed by the father, is the same blood as that of Violetta Purchase, or one-quarter." Such a proposition is entirely devoid of merit. In 1 Cooley's Blackstone, fourth edition, page 615, it is said: "A kinsman of the whole blood is he that is derived, not only from the same ancestor, but from the same couple of ancestors. For, as every man's own blood is compounded of the bloods of his respective ancestors, he only is properly of the whole or entire blood with another, who hath (so far as the distance of degrees will permit) all the same ingredients in the composition of his blood that the other had." It clearly appears from this that respondent, being a half-sister of decedent's father, and having one ancestor in common with decedent, is a kindred of the half blood.

The contention is made that "There is no evidence to support finding XV, 'That defendant, Lillie Abbie Carruth, is a kindred of the 5th degree to Charles Mortimer Belshaw, deceased, on the paternal side'; and there is no evidence whatever in support of defendant-appellant, Lillie Abbie Carruth's alleged relationship to decedent." It is unnecessary to consider this claim, for in view of the conclusions we have reached with reference to the meaning of section 1394 of the Civil Code, appellant Lillie Abbie Carruth is

not entitled to succeed to any of the estate of decedent, even though the relationship be established.

The judgment is affirmed.

Shaw, C. J., Waste, J., Lennon, J., Wilbur, J., and Ward, J., concurred.

Rehearing denied.

All the Justices concurred.