| 5 Wh 477 |
|---|
| f 209      193 |

</div>

[ PHILADELPHIA, APRIL 11TH, 1840. ]

BAKER and Another *against* CHALFANT and Another.

IN ERROR.

One died intestate, after the passage of the act of the 9th of April, 1833, seised of real estate which had descended to him from a brother ; leaving neither widow nor children, nor brothers or sisters of the whole blood ; but leaving sisters of the half blood, and uncles, &c., on his father's side. *Held*, that the land passed to the sisters of the half blood, to the exclusion of the more remote kindred of the whole blood.

ERROR to the Common Pleas of Chester County.

In the Court below an action of ejectment was brought by Jacob Chalfant and Mary Bucher against Rachel Baker and Sarah Fredd, to recover three several tracts of land, situate in the township of East Marlborough, in the county of Chester; "the first whereof

contains ninety acres, or thereabouts, with the appurtenances, and is bounded by land of Thomas Webb, Job Hayes, and others: the second whereof contains one hundred and ten acres, or thereabouts, with the appurtenances, and is bounded by land of John Reed, John. Malin and others: and the third whereof contains twenty-one acres, or thereabouts, with the appurtenances, and is bounded by lands of the said plaintiff and others."

By agreement of the counsel, a case was stated for the opinion of the Court, as follows: which was to be considered in all respects as if the facts had been found by a special verdict.

"Caleb Chalfant died August 31st, 1839, seised in his demesne as of fee of the three tracts of land above described.

Henry Chalfant, the father of Caleb, was the fee-simple owner of the first tract. He died January — 1817, intestate, leaving issue two sons, Caleb and Abner, to whom the said tract of ninety acres descended. It was held by them as tenants in common, till about four years ago, when Abner released his moiety to Caleb, by whom it continued to be held till his death.

. ·The second tract, of one hundred and ten acres, was owned and held by Jane Jackson, who intermarried with Abner Chalfant, above named, and joined with him in a conveyance of the same in the year 1831, to Alexander Chandler, who immediately after conveyed to the said Abner. The wife soon after died. Abner Chalfant continued to hold the property till his death, on the 30th day of March, 1839. He left to survive him, Edith, his third wife, (who is still living,) but no issue. The last mentioned tract, on the death of Abner Chalfant, descended to the said Caleb Chalfant, who entered and continued seized till his death, subject to the rights of the widow. of Abner, under the intestate laws of the commonwealth.

The third tract above-mentioned, the said Caleb Chalfant acquired by purchase several years before his death.

Upon the death of Caleb Chalfant, the said defendants entered upon the said three tracts of land, and ousted the plaintiffs.

Henry Chalfant, Sen., was the common ancestor of the plaintiffs, and of Caleb and Abner Chalfant. He died, leaving issue Henry Chalfant, Jr., Jacob Chalfant, one of the said plaintiffs, Mary Chalfant, (now Bucher) the other of the said plaintiffs, Jonathan Chalfant, Thomas Chalfant, Caleb Chalfant, Sen., and Elizabeth, intermarried with Joseph Dickinson, all of whom are now deceased, except the plaintiffs.

Henry Chalfant, Jr. left issue Abner and Caleb Chalfant, as aforesaid.

Jonathan Chalfant left issue eight children, two of whom are living, and two dead, unmarried and without issue. The other four left issue.

Thomas Chalfant left issue one child, who is living.

(Baker v. Chalfant.)

Caleb Chalfant, son of Henry, left eight children, two of whom are deceased, leaving issue.

Elizabeth intermarried with Joseph Dickenson; left issue six children, one of whom is dead, leaving issue.

Caleb Chalfant, son of Henry, Jr., survived all the above mentioned decedents.

Henry Chalfant Jr. intermarried with Susan, the widow of Isaac Swayne, by whom she then had two children, Rachal and Sarah Swayne.

Rachel intermarried with Nathan Baker, who is deceased, and Sarah with Benjamin Fredd, who is also deceased. The said Rachel and Sarah, the defendants above-named, are half-sisters of the said Caleb and Abner Chalfant, being children of the same mother.

The question submitted is, whether the plaintiffs are entitled to recover the whole or any part of the above mentioned tracts. If they are entitled to recover the whole of said tracts, or any one of them, then judgment to be entered in their favour for the tract or tracts which they are thus entitled to recover, with costs: if they are entitled to recover a part or parts of all or either of the said tracts, then judgment to be entered in their favour for such part or parts as they may thus be entitled to with costs.

If entitled to recover no part, then judgment to be entered for the defendants, with costs."

Upon this case the Court of Common Pleas after argument gave judgment for the plaintiffs on the 15th of February, 1840; whereupon this writ of error was taken out.

Mr. *Dillingham*, for the plaintiffs in error, cited *Collingwood* v. *Bace*, (1 *Ventr.* 413.) 2 *Black. Com.* 223. *Robertson on Succession*, 334. 3 *Cruise*, 364. *Reeves's Law of Descents*, 382.

Mr. *Lewis*, contra, cited *Nicholson* v. *Halsey*, (1 *Johns. Ch. Rep.* 421.) *Williams on Executors*, 908, 930. 2 *Ld. Raymond*, 496. 1 *P. Wms.* 595. 2 *Vernon*, 168. 1 *Ld. Raymond*, 573.

The opinion of the Court was delivered by

GIBSON, C. J.—The words of the proviso no more exclude the half blood from the succession to an ancestral estate, than they exclude it from the succession to a purchased one; and indeed any exclusion of a brother or sister, would be so unnatural and impolitic, that we ought not to suppose it to have been intended, by any thing less than express enactment or irresistible implication. What is there to raise an implication here? The proviso follows close upon a section in which provision is made for the half blood in broad and general terms; and had it been intended to restrain it to purchased estates, it would have been easy, and more in the ordinary course of expression, to say so explicitly. In default of issue,

(Baker *v.* Chalfant.)

and of brothers and sisters of the whole blood, it is said, " the real estates of such intestate shall descend to, and be vested in, the brothers and sisters of the half blood of the intestate, and their issue in like manner respectively as is herein provided for brothers and sisters of the whole blood, and their issue." The word " blood" in the proviso, is also used generally; and to apply it in the limited sense ascribed to it, would deprive the half blood of much the greater part of the benefit precedently extended to it, " Provided," it is said, " that no person who is not of the *blood* of the *ancestor*, or other relations from whom the estate descended, shall, in any of the cases before mentioned, take any estate of inheritance therein ;" and hence an argument that the generality of the provision for the half blood, must, to avoid repugnance, be restrained by the proviso to purchased estates, in order to let the latter operate on ancestral estates, for which it is supposed to have been intended. That it was not intended particularly for the point before us, but for all the previous provisions of the statute, whether in favour of the half or the whole blood, is clear from the fact that disqualification for want of inheritable blood, it was supposed, might sometimes occur " in any of the cases before mentioned." Independently of that, the very reason of the provision, for the half blood, must lead us to believe that no distinction was contemplated betwixt estates which had been acquired by purchase, and those which had been acquired by descent; for if a half blood brother is of the intestate's blood at all, he is necessarily of the blood of their common ancestor; and if he is not of the blood of the intestate, why is he allowed to derive even a purchased estate from him in preference to those who, though more remote, are thought to be of the ancestor's blood in a double aspect? Though a descent from a brother to a brother, is what is called an immediate one, their consanguinity is traceable only through a common ancestor; and if demi-kindred, thus established, may make out the claimant to be of the ancestor's blood for one purpose, it is past my power to comprehend why it may not do so for another. Neither do I apprehend what is meant by being of the whole blood of the *ancestor ;* and the word blood is used in reference to him alone: or how a half-brother can be of less than the whole blood of a parent who stood as near to him in consanguinity, as to the intestate. Were it used in reference to the intestate in the sense ascribed to it, the half blood could not take at all, and the entire provision made for it, would be frustrated by the utter repugnance of the proviso. On failure of the half blood, the distinction attempted, would give an ancestral estate to the public in place of a brother or sister standing nearer in affection to the intestate than all the world beside. Such a consequence would shock the common sense of every man in the community. In providing for an intestacy, it is the business of the legislator to consult the presumptive intent of the intestate, and to do for him what, it

(Baker v. Chalfant.)

may be supposed, he was prevented by disability, or the suddenness of death, from doing for himself; and who can believe he would, in this case, have cut off his sisters ? No one would suppose him to have been such a monster. In like manner, it is the duty of the judge, in the interpretation of doubtful phrases, to be guided by the same presumptive intent, especially when it may be done without wresting the words from their natural or technical meaning. Now that the word "blood," in its technical and in its natural sense, includes the half blood, and that it has always been used to that intent in statutes and the common law, was shown by Mr. Justice Story in *Gardner* v. *Collins*, (2 *Peters*, 87;) and that it is to be applied in that sense to an ancestral estate under the statute of New Jersey, was held in *Den* v. *Jones*, (2 *Halst.* 340.) If then there is no difference, in this respect, betwixt such an estate and one acquired by purchase, what, it may be asked, was intended by the declaration in our proviso that none shall inherit but they who are of the blood of the ancestor ? Obviously to prevent an estate accumulated by one family from being drawn out of it by a half blood link into a family of strangers. Thus, two distinct families whose surviving parents have intermarried and procreated an intermediate one, are not of each other's blood, though the intermediate family is of the blood of both, and may, in the circumstances specified in the statute, inherit an estate from a member of either of them ; but on a failure of the intermediate blood, in its turn, the proviso would come in to turn the estate back into the family from which it came, instead of suffering it to pass to the half blood collaterals on the other side ; and this it would do by requiring them to show, what they could not, privity in blood with the parent from which it started, and a consequent capacity to inherit from him. The proviso may operate, also, where there are only two sets of children ; for instance to prevent an estate from being transmitted through the same medium to a step-child. But even were the true interpretation different from the one I have been establishing, it would be sufficient for the case at bar that the estate is in truth, not ancestral ; for though there had been a descent, it had been from a brother to a brother ; who, and not the purchaser, is the propositus : consequently there had been no descent from an ancestor. With each of those brothers, these sisters stood exactly in the same consanguinity ; and were they unqualified to inherit from the propositus, it is not easy to determine how they could have inherited from the other, had the propositus died before him. Did we choose to put the decision on that ground, the very foundation of the argument would fail ; but we put it on a broader basis, holding, as we do without qualification, that the half blood may inherit an ancestral estate, whenever it is also of the inheritable blood of the ancestor.

The judgment below is reversed ; and judgment here in favour of the defendants below, for the tract of one hundred and ten acres, the

(Baker *v.* Chalfant.)

part of the property in dispute, the tract of twenty-five acres, and the moiety of the ninety acre tract, and in favour of the plaintiffs below for the other moiety of the said ninety acre tract.

Judgment accordingly.