*Alricks and Fisher, for plaintiff.*

*Alricks, for defendant.*

---

*Court of Common Pleas, Dauphin County, July 3d, 1858.*

MAY v. ESPENSHADE ET AL.

A man purchased land, and died, leaving a mother, brothers, and sisters of the half blood, and a widow, who 'gave birth to a posthumous child, who died without issue. Held, that the mother of the first purchaser is entitled to the fee in preference to his widow; but the half-brothers and sisters inherit the fee in preference to the mother.

In Pennsylvania, land will lineally ascend, and uncles and aunts of the half blood will inherit in preference to a mother, who is not of the blood of the first purchaser.

BY THE COURT.—From the case stated it appears that Frederick May was the owner by purchase of the piece of land in controversy, and died seized thereof in fee, having by will bequeathed it to his wife, the plaintiff. Subsequently the wife gave birth to a posthumous child, called Frederick May, Jr., and in consequence of his birth, the will became void. Frederick May, Jr., died in infancy, leaving to survive him his mother, the plaintiff, and grandmother on the side of his father, Catharine Espenshade, formerly May, and John May, Daniel May, and Catharine Baker, formerly May, half brothers and sisters of his father, the defendant. The question submitted is, which of these parties take the fee? There can be no doubt that the plaintiff is entitled to a life estate in the premises. The rights of the parties must depend on

[May *v.* Espenshade et al.]

the proper construction of the act of April 8th, 1833, relative to the estate of intestates.

The plaintiff claims in the first place that she is entitled to the fee under the words of the 5th section of the act, which declares that in default of certain heirs therein enumerated, the real estate of the intestate "shall go to and be vested in the father or mother, or if both be living at the time of his death, in the father or mother, for such estate as the intestate had therein," or under the 7th section, which provides that "in default of all persons hereinbefore described, the real and personal estate of the intestate shall descend to, and be distributed among the next of kin of such intestate." It is manifest that none of the defendants are previously enumerated in the act, nor are they next of kin. The 9th section, however, says, "that no person who is not of the blood of the ancestors, or other relations, from whom any real estate descended, or by whom it was given or devised to the intestate, shall, in any of the cases before mentioned, take any estate of inheritance therein, but such real estate, subject to such life estates, as may be in existence by virtue of this act, shall pass to and vest in such other persons as would be entitled to this act, if the person, not of the blood of such ancestor or other relation, had never existed, or were dead at the demise of the intestate."

Frederick May, the elder, having acquired this land by purchase, must be taken as the perquisitor or person from whom the descent is to be computed. It is very clear that his widow (the mother of the person last dying seized) is not of the blood of the first purchaser, and is, therefore, precluded from taking under either of the sections, they both being *enumerated* in the one last referred to. This principle is settled in Maffit *v.* Clark, 9 W. & S. 258; 1 Am. Law Register, 624; 10 Harris, 291. Besides the controlling provision already cited in the 9th section, it is questionable whether the plaintiff could claim under the 7th section for another reason; it declares the land shall *descend* to, and be distributed among the next of kin. To enable the mother to inherit as heir to her child, the estate must *ascend*.

It is not contended by the plaintiff that even if she is not entitled to inherit as heir of her son, under either of the sections already referred to, on account of not being of the blood of the first purchasers, she cannot take under the 11th section, which declares, "that in every case which may arise, not expressly provided for by this act, the real as well as the personal estate of the intestate shall pass to and be enjoyed by the next of kin of such intestate, without regard to the ancestor or other relation from whom such estate may have come." It is very clear that Mrs. May is next of kin to her son, and will inherit this estate unless there is some relative who can take in preference to her under the 9th section, on account of being of the blood of the first pur-

chaser. There is no one in existence so near of kin. Catharine Espenshade contends that she is entitled in preference to the plaintiff, as she is of the blood of her son, the perquisitor. To her claim the objection is raised that it runs counter to a common-law canon of descent which declares that "inheritances shall lineally descend *ad infinitum*, but shall never lineally ascend." This objection is well founded unless our acts of Assembly have in that particular changed the common law. Judge Yeates says in Shippen *v.* Izard, 1 S. & R. 226, that "in passing the acts for distributing the estates of decedents the legislature had two objects in view; to abolish the feudal principle that lands cannot *lineally ascend;* and that sisters shall inherit equally with their brothers," to which he might have added, "and also the more equal and general distribution of estates among all the heirs, in preference to bestowing the whole on the heir at common law, according to the rules of primogeniture." These objects have been kept still more emphatically in view by the subsequent legislation, as is manifested by the 11th section of the code which gives the estate to the next of kin, without taking into consideration the blood of the purchaser, rather than permit it to go exclusively to the heir at common law, or escheat to the commonwealth. The intestate law has in terms provided for inheritances lineally ascending to the father and mother. Does it by implication include still earlier ancestry? The 9th section drops the words of descent used in the 7th section, and declares that "the estate shall pass to and vest in such other persons as would be entitled by this act, if the persons not of the blood of such ancestor, or other relation has never existed, or were dead at the decease of the intestate." We believe that the framers of the code intended that on the failure of issue, or other enumerated heirs, the estate should ascend in a direct line to a grandfather rather than to the brothers and sisters or more remote kindred of such grandfather, who can only claim through him, yet ask to take during his lifetime. The legislature seems strenuously to have kept in view the policy of retaining real estate in the blood of the first purchaser, and in giving effect to that intention we may sometimes find ourselves obliged to pass over the father or mother of an intestate, and give the property to a more distant relative; as in the present case, prefer the grandmother to the mother; but the rule is not to be disregarded because it may operate with occasional hardship. Catharine Espenshade cannot claim the fee simple in the estate as nearest kin to Frederick May, Jr., but she is the blood of the first purchaser, which Susan May is not, and if there were no other kindred would be entitled to take "as if the said Susan had never existed, or were dead at the decease of the intestate." In coming to this conclusion we have not been without difficulty, yet in our opinion it carries into effect two of

the general objects of the legislature, the retention of the estate in the blood of the first purchaser, and the abolition of the canon which prevents estates from lineally ascending, and with that abrogated and out of the way, the grandmother is entitled to the estate in preference to the mother of the decedent. That the mother did not take the fee is clearly settled in Bevan *v.* Taylor, 7 S. & R. 397, a case similar to the present in many of its features. William Forbes had acquired real property by purchase, was married and died, leaving his wife and issue, one son, Nathaniel Forbes. Subsequently Nathaniel died intestate, without issue, his mother surviving him many years. Yet it was held that she took but a life estate; and on her death the property went to the next of kin *ex parte paterna*, although N. Forbes left nearer relatives *ex parte materna*. Had the fee simple ascended to the mother, her kindred would have taken by descent from her, instead of the estate passing to the more remote relatives of her deceased husband. It is true that decision was made under the acts of 1794 and 1797, but in this particular we conceive there is no essential change in the law.

For the purpose of deciding the plaintiff's claim, the case might stop here, as kindred have been found of the blood of the first purchaser entitled to take under the 9th section of the act before reaching the status of the plaintiff, who must come in, if at all, under the 11th section. But we are asked further to decide between the relative claims of the different defendants, the mother, brothers, and sisters of the half-blood perquisitor, and also between the last-named relatives of the plaintiff. It is said that there is no provision for relatives of the half-blood, except for brothers and sisters of the intestate; and the parties here named are not half-brothers and sisters, but half-uncles and aunts, being of the half-blood of his father, the first purchaser. If they were the half-brothers and sisters of the intestate, they would take in preference to his mother, as the gift to her, by the words of the 5th section, is qualified by the 9th section, which requires her to be of the blood of the first purchaser, and also by the 6th section, which gives the estate to the half-blood, unless there is a father or mother, competent by this act to take an estate of inheritance therein.

But to me it is very clear that they are of the blood of the first purchaser within the 9th section of the act, and therefore competent to take in preference to his widow. In construing a similar statute, Judge Story, in Gardner *v.* Collins, 2 Peters, 87, says: "We think that the phrase 'of the blood' in the statute includes the half-blood. This is the natural meaning of the word 'blood' standing alone and unexplained by the context. A half-brother or sister is of the blood of the intestate, for each of them has some of the blood of a common parent in his or her veins.

[May *v.* Espenshade et al.]

A person is with the most strict propriety of language affirmed to be of the blood of another who has any, however small a portion, of the same blood derived from a common ancestor." Chief Justice Gibson's opinion, in Baker *v.* Chalfant, 5 Wh. 477, is marked by the same course of reasoning. Although the uncles and aunts of the intestate are not named, or in the language of the act expressly enumerated in any of the preceding sections, yet they are recognized as heirs under the 9th section in Parr *v.* Blankhart, 10 Harris, 291, because they are of the blood of the first purchaser, whilst uncles *ex parte materna* of equal propinquity to the estate are rejected, because they are not of that blood; see also as to half-blood, Hart's Appeal, 8 Barr, 32, and as to remote kindred taking, 5 Barr, 164. I, therefore, have no doubt of the right of John May, Daniel May, and Catharine Baker to take the fee in preference to Susan May. The question is, are they to be preferred to Catharine Espenshade?

These parties stand in the same degree of consanguinity to Frank May, the perquisitor; they are each but one degree removed, for although only of the half-blood, yet the degree of relationship is the same. I am disposed to think that when the half-blood are called in to inherit under the 9th section of the act, as being of the blood of the first purchaser, they stand in the same right, so far as regards other kindred, as the whole blood, although they would be postponed and not share equally with the whole brothers and sisters. If the perquisitor had left such relatives who survived the intestate, there can be no doubt but that they would inherit this estate in preference to his mother or the mother of the intestate. This would conform to the whole policy of the law. In our opinion brothers and sisters of the half-blood have the same rights under that section as against the mother of the first purchaser, and that, therefore, John May, Daniel May, and Catharine Baker take the fee-simple in this estate in preference to Catharine Espenshade. In coming to this conclusion we are by no means clear of doubt, not having any guide in the decisions and the act of Assembly being obscure, but it is our best judgment. We therefore determine that the fee-simple is in John May, Daniel May, and Catharine Baker, and enter judgment in their favor, subject to the life estate of Susan May.

*Alricks, for plaintiff.*

*Mumma, for defendant.*