# Leech's Estate.

*Will—Construction—Distribution—Gifts over to those entitled under "then existing intestate laws"—Intestacy—Decedents' estates.*

1. Technical rules of construction should be resorted to and applied in the interpretation of wills only when found to be necessary in determining the meaning of the instrument, so as to effectuate the purpose of testator. If the language employed by him in disposing of his estate is plain and clearly discloses his intention, the will interprets itself.

2. Where a testator, after creating a trust of the residue of his estate, and directing payment of one-third of the income to his wife for life, directs the remainder of the income to be paid to his three children during their lives, and to the issue of such as might die leaving issue, during the minorities of the issue, and further directs that the corpus should be held and payment of incomes be made under a spendthrift trust, and finally directs that "after these trusts have been fully executed, then the said property shall descend and go as my estate according to the then existing laws of Pennsylvania," the estate will be distributed, after the death of all the three children without leaving issue, to the testator's next of kin living at the period of distribution rather than at his death.

3. In such case nephews and nieces will take in preference to the administrators of the deceased children.

Argued April 20, 1922. Appeals, Nos. 379, 380, 381, Jan. T., 1922, and No. 20, Jan. T., 1923, by Jameson Cotting and Alfred P. Palmer, Executors of S. Josephine Loftus, deceased, et al., from decree of O. C. Phila. Co., dismissing exceptions to adjudication in estate of William F. Leech, deceased. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

. Exceptions to adjudication of THOMPSON, J.
See Leech's Est., 1 Pa. Dist. & Co. R. 352.
The opinion of the Supreme Court states the facts.
Exceptions dismissed in opinion by GEST, J.
Jameson Cotting, administrator of Marie Leech Cotting, deceased (grandchild of testator), Jameson Cotting and Alfred P. Palmer, executors of S. Josephine Loftus, deceased, James S. Swartz and Alfred P. Palmer, executors of David C. Leech, and James S. Swartz, executor of Henry S. Leech, deceased, appealed.

*Error assigned*, inter alia, was decree dismissing exceptions, quoting record.

*William W. Porter* and *George Wharton Pepper*, for Jameson Cotting and Alfred P. Palmer, Executors, et al., cited: McCrea's Est., 180 Pa. 81; Fitzpatrick's Est., 233 Pa. 33; McFillin's Est., 235 Pa. 175; Bache's Est., 246 Pa. 276; Crawford's Est., 17 Pa. Superior Ct. 170; . Packer's Est., 246 Pa. 116.

*William N. Trinkle*, of *Bell, Kendrick, Trinkle & Deeter*, with him *Joseph D. Redding*, and *Root, Clark, Buckner & Howland* and *John M. Perry*, of New York, for Jameson Cotting, Administrator of estate of Marie Leech Cotting, deceased, cited: Hancock's App., 112 Pa. 532; Patterson v. Caldwell, 124 Pa. 455; Tatham's Est.,

250 Pa. 269; Buzby's App., 61 Pa. 111; Stewart's Est.,
147 Pa. 383.

*Francis Shunk Brown* and *Ira Jewell Williams,* with
them *Francis Shunk Brown, Jr.,* and *Gunnison, Fish,
Gifford & Chapin,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, May 15, 1922:

Most adequate presentation of appellants' position by
able counsel has failed to convince us that the construc-
tion of the will of William F. Leech adopted by the
orphans' court is wrong.

Testator died October 29, 1869; the date of his will is
November 25, 1867. The estate is large, the balance for
distribution being $1,676,000.

The controversy arises out of the eighth paragraph of
the will, which, in the respects material to a disposition
of the case, is in these words: "8. I give devise and be-
queath all the rest and residue of my estate whatsoever
and wheresoever unto my executors and the survivor of
them, in trust to receive the income and profit thereof,
to pay the taxes thereon, to keep the real estate in repair,
and to pay over one-third of the net income thereof in at
least quarterly payments to my wife for and during the
term of her natural life,......The remainder of the net
income and profits thereof is to be paid in like manner
to my three children, share and share alike during their
respective lives and to the issue of such of them as may
die leaving issue (during the respective minorities of
such issue), the said issue taking their deceased parent's
share. This property is thus to be held in trust and
these payments are to be made to and for the sole and
separate use of my wife and of my children in the manner
aforesaid, free from all liability for their debts, contracts
or engagements by attachment or execution or assign-
ment or anticipation or in any other manner whatever.
After these trusts have been fully executed then the said
property shall descend and go as my estate according to

the then existing laws of Pennsylvania, provided however that if either of my sons should die leaving a widow I direct the said trustees to pay to such widow during life, if she shall so long remain my son's widow, such part of the income of my estate which would have been coming to such son as he may by any last will and testament in writing direct and appoint."

Appellants urge that the fourth paragraph of the will authorizing the executors at their discretion to pay to each of testator's sons a sum not to exceed $25,000 to enable him to commence business, and, under certain contingencies, a further sum of like amount for the same purpose, and the provision of the fifth paragraph, authorizing the executors, on the marriage of his daughter, to apply a like sum to the purchase and furnishing of a residence for her, with the direction that the sum or sums advanced for the sons or daughter shall be deducted by the executors "in such a way from their respective shares of my estate which I am about to set apart for their benefit so that no inequality shall occur and no injustice be done to any of my children for I have the same affection for each of them and desire only to do the best that can be done for their welfare," have an important bearing on the construction of the will as evidencing testator's dominant and controlling intent to first provide for his children.

The question for decision is whether under the terms of the will the property passes to the personal representatives of testator's three deceased children, as of the date of his death, or, as of the date of the death of his last surviving child, to the children and grandchildren of his deceased brothers and sister, there being no lineal descendants living at the termination of the trusts.

It is the contention of counsel for some of the appellants that testator adopted the law as it should be at the termination of the trusts as the basis of apportionment among his lineal heirs as they were at the time of his death, that his specification of the laws that should

govern the distribution did not place any limitation on the class of persons who should take under them; that it was a gift pursuant to laws then existing, not to persons then existing. This is ingenious, but not convincing. The persons who are to take are as much indicated by the words "then the said property shall descend and go as my estate according to the then existing laws of Pennsylvania" as is the manner of the taking. The law which would determine the division would determine the persons as well.

Counsel for another of appellants argues that the controlling intent of the will is manifested by its declaration that the testator was about to set apart the respective shares of his estate for the benefit of his children, and that it was his "desire only to do the best that can be done for their welfare"; that the provision as to distribution "according to the then existing laws" was adopted by the testator as the legal means whereby his childrens' respective shares of his estate would be rendered immune in their lifetime from seizure and sale for their debts. It is difficult to follow this line of thought, in view of the express language of the document.

After careful consideration of everything brought to our attention by appellants, we cannot escape the conclusion that the meaning of this will can only be arrived at from the language the testator used and that any other meaning than that which arises from his language is a supposed intent and not the real one. "Neither precedents nor rules of construction can override the testator's expressed intent": Long's Est., 270 Pa. 480, 487; Henry's Est., 271 Pa. 416. "Rules of construction have no place in determining the intention of a testator where it is reasonably clear from the will itself": Alburger's Est., 274 Pa. 10. "The purpose in construing a will is to ascertain the intention of the testator, so that it may be carried out in the disposition which he has made of his property. Technical rules of construction should only be resorted to and applied in the interpretation of

wills when found to be necessary in determining the meaning of the instrument, so as to effectuate the purpose of the testator. If the language employed by him in disposing of his estate is plain and clearly discloses his intention, the will interprets itself, and hence no rules of construction are necessary to aid in its interpretation. ......All mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful. It is a rule of common sense as well as law not to attempt to construe that which needs no construction": Wood v. Schoen, 216 Pa. 425, 428.

Measured by the rule laid down in the foregoing cases, we think testator's intent as expressed in the words he used is unmistakable. After creating the trust of the residue of his estate and directing the payment of one-third of the income to his wife for life, he directed the remainder of the income to be paid to his three children during their lives and to the issue of such as might die leaving issue, during the minorities of the issue, and provided that the corpus should be held and the payments of income be made under a spendthrift trust. He then used this clear and explicit language as to the corpus, "After these trusts have been fully executed then the said property shall descend and go as my estate according to the then existing laws of Pennsylvania." The trust has terminated. Whatever testator's idea may have been as to who would be living when it came to an end, it is inconceivable that he could have intended that the property should vest in his children, which is the contention made by appellants, because he knew, and had so provided, that, at the time of vesting, they must be dead. May not this testator with rather rare prescience have had in mind just what has happened, that all his children and their issue might be dead? If he did, then the will was wisely drawn, and every contingency was covered to keep his possessions in those of his own blood; upon the death of his last surviving child and the closing of

the minorities of their issue, the property would have descended and gone as his estate according to the then existing laws of Pennsylvania to the surviving issue; issue failing, it passes to the persons to whom the intestate law sends it, his nephews and nieces and grand-nieces.

If testator had left grandchildren living at the termination of the trust, there could be no question raised as to their right to take the property, no contention could in that event have any foundation which asserted that his children take. What possible difference can it make in construing the document that the beneficiaries are nephews and nieces and children of a deceased nephew; the argument of appellants to stand at all, there being no limitation over after the life estates, must go to the extreme that the property vested in the children in any event. The argument, in the view we take of the will, that testator has disinherited his heirs, is not tenable. He has done the very opposite by passing his property to those who are his heirs by blood at the time it vests.

The determination of the court below that distribution should be made to appellees, heirs and next of kin of William F. Leech, at the time the trust terminated, was correct.

The assignments of error are overruled and the decree is affirmed, at the cost of appellants.