## Stewardson's Estate.

[redacted]

The facts appear from the adjudication of

LAMORELLE, P. J., Auditing Judge.—Ann Stewardson, who died in 1883, gave one-third of her residuary estate in trust to pay the net income thereof in equal parts to the two daughters of her brother, Thomas Stewardson, to wit, Anna and Mary E. Stewardson, and his son, Langdon Cheves Stewardson, until the death of the survivor, and upon the death of the survivor, to the then surviving children of the *cestuis que trustent,* and "in default of any such surviving children then to the use of the next of kin of the blood of said brother Thomas, excepting always his son, Henry Hollingsworth, and his descendants and representatives." She also gave a sum of $6000 in trust to pay the net income therefrom to her nieces, Anna and Mary E. Stewardson, share and share alike, and upon the death of the survivor to hold for the same purposes as declared as to her residuary estate. As they have both died, this $6000 fell into the residue.

The accounting is of one-third of the residuary estate, and the reason for the filing of the account is the death of Langdon Cheves Stewardson, the survivor of the three, which occurred September 6, 1930, without issue. His said sisters predeceased him and died without issue, so that the principal is distributable to the next of kin of said Thomas Stewardson with the exception of Henry Hollingsworth Stewardson, and his descendants, and he, the said Henry Hollingsworth Stewardson, also died without issue.

Testatrix had two brothers, Thomas and George, and one sister, Elizabeth. Thomas died in 1878. Elizabeth died in 1875. Thomas left to survive him five children, Mary, Caroline, Anna, Henry and Langdon C.

Mary died February 19, 1918, without issue, and with no provision as to her residuary estate, whereby the same became distributable unto her surviving sisters and brother, Caroline, Anna and Langdon, as confirmed in the adjudication dated December 4, 1918.

Caroline H. Humphreys died November 24, 1921, leaving a will wherein she gave her residuary estate unto her sisters and brother to be equally divided between them. Her sister, Anna, and her brother, Langdon, having survived her, they became entitled to her residuary estate.

Anna Stewardson died September 17, 1923, without issue, and by her will she gave her residuary estate in trust for her sister, Caroline H. Humphreys, for life (she was then deceased), with remainder to Hope C. Randolph and Anna Hampton Hoffman in equal shares, so that any interest she had in this estate, which would be a one-half interest, became vested in them share and share alike.

Langdon C. Stewardson died as aforesaid.

The date of the death of George is not given, but testatrix in her will refers to him as being deceased.

Thomas was survived by one brother and two sisters, to wit, the testatrix, George and Elizabeth. George died subsequently and left two children to survive him, Margaret and Thomas M. Margaret died in 1895, without issue, and Thomas M. died in 1902, survived by three children, Mary Morton Stewardson, Eleanor Percy Stewardson and Emlyn La Mar Stewardson, all of whom are living and of full age. There were no issue of deceased children of Thomas M.

Elizabeth Stewardson Brown left to survive her five children, Anna S. Cope, Mary E. Hartshorne, Frances S. Brown, Susan S. Brown and Elizabeth H. Brown.

Susan S. and Elizabeth H. died in 1909 and 1917, respectively, without issue.

Anna S. Cope died January 4, 1916, survived by five children, Thomas P. Cope, Rachel C. Evans, Elizabeth Cope, Anna B. Stork and Caroline M. Lewis, all of whom are living and of full age, and no issue of deceased children.

Mary E. Hartshorne died in 1887, survived by a daughter, Anna C. Hartshorne, who is living, and no issue of deceased children.

Frances S. Brown, who died December 13, 1901, was survived by six children, Ridgely Brown, Hazel Brown, Herbert Brown, Elizabeth S. Brown, Francis H. Brown and Frances H. Brown, all of whom are living and of full age, and no issue of deceased children.

The question submitted is whether the next of kin of Thomas Stewardson are to be ascertained at his death, at the date of the death of testatrix or at the date of the death of the last surviving *cestui que trust*, Langdon C. Stewardson.

In considering this question, it is necessary to state more fully the provisions of the will of testatrix. By her will, she gave one-third part of the residuary estate in trust "to pay over the net annual income and produce thereof in equal shares unto all the daughters of my deceased brother Doctor Thomas Stewardson who shall survive me and to his son Langdon Cheves Stewardson if he shall survive me and to the issue of such of them as shall die before me leaving issue share and share alike such issue taking the same amount and in the same proportion as their respective parents would have taken if living for and during the term of the natural life of the longest liver of the said daughters and of the said son of my deceased brother Thomas and upon the death of such longest liver then to the use of the then surviving children of the aforesaid daughters and of their brother Langdon in equal shares *per capita* and in default of any such surviving children then to the use of the next of kin of the blood of said brother Thomas, excepting always his son, Henry Hollingsworth, and his descendants and representatives."

By the second codicil, testatrix provided as follows: "Considering that a third part of my residuary estate divided among the daughters . . . would amount to so little for each one I have concluded to and do hereby leave all of this third to the two daughters only. . . . For a like reason I hereby except and exclude my niece Caroline now the wife of Colonel Humphreys and daughter of my late brother Doctor Stewardson from the residuary devise and bequest to certain children of my said brother and limit the same exclusively to Anna, Mary Hollingsworth and Langdon Cheves three of the children of said brother, for whom alone this third part of my residuary estate shall be held by the trustee thereof named in my foregoing will."

It is contended by counsel representing the estates of the children of Thomas Stewardson, other than Henry Hollingsworth, that the next of kin of the blood were to be ascertained at the death of Thomas; and it is contended that the language of the codicil was intended merely to exclude Caroline H. from any participation in the income. That she was not intended to get any of the income is clear. Whether testatrix intended to exclude her from getting any portion of the corpus is not so clear. Taking into consideration the language of the codicil only, the Auditing Judge is of opinion that it was not her intention to deprive her of getting a portion of the corpus in the event that she survived the three *cestuis que trustent*.

Incidentally, it might be stated that all the children of Thomas, who were living when the will was executed, survived testatrix, so that the real question we have to decide is whether testatrix was referring to those who would answer the description of next of kin at her death or at the death of the survivor of the *cestuis que trustent*.

This is not a case of a limitation to A, with remainder to the heirs of testator or grantor. A man's heirs are necessarily determined as of his death, and where a limitation is created by deed, the heirs cannot be ascertained before that time. Where the limitation is created by will, at the common law the heirs of the testator were ascertained at his death, and very strong evidence was required to show that the word "heirs" was not used in a technical sense.

Here, the word "heirs" is not used. The words are "next of kin," but there is a modifying phrase "of the blood." Under this language a widow or her husband could not take. The collocation of the words is equivalent to the word "heirs."

The general principle of law is that the beneficiaries are ascertained at the death of testator. The law very strongly favors a vesting of title at the death of testator rather than at some subsequent time. If, however, testator expressly fixes a subsequent time, or that intention is necessarily implied from the language used, then, of course, the beneficiaries must be ascertained at the time fixed.

In this case, it is to be noted the remainder is limited upon the death of the longest liver "then to the use of the then surviving children of the aforesaid daughters and their brother Langdon in equal shares *per capita*." A child, or children, of the *cestuis que trustent*, in order to take, had to be living when the trust terminated; and as the distribution was to be *per capita*, if such child left issue that was living when the trust terminated, such issue could not take. A passing of the estate through a deceased child to strangers to the blood of Thomas was thus guarded against, and the principle of representation was not adopted.

We come, now, to the alternative provision which is "then to the use of the next of kin of the blood of said brother Thomas excepting always his son Henry Hollingsworth and his descendants and representatives." If we construe this language as meaning that the next of kin are to be ascertained at the death of testatrix, the corpus will pass, of course, to those who are of the blood of Thomas, but when actual distribution occurs, the distributees might not be persons of the blood. She guarded against such a result so far as the children of the *cestuis que trustent* were concerned, and it is a fair inference that she intended to guard against a similar result in the alternative limitation and the words "of the blood" were used with that idea in mind.

The use of the word "then" also shows that the class was to be ascertained at the time when the trust terminated. Testatrix provided upon the death of the longest liver "then to the use of the then surviving children." The first

"then" may have been used conjunctively or adverbially. The Auditing Judge inclines to the view that it was used adverbially. There can be no doubt, however, that the second "then" was used in an adverbial sense. She further provides: "in default of any such surviving children then to the use of the next of kin." The words "in default of any such surviving children" can be read "in case there are no surviving children." These words are used conjunctively, and in the opinion of the Auditing Judge, the word "then," in the phrase "then to the use of the next of kin" was used in an adverbial sense.

The attention of the Auditing Judge is also drawn to the fact that there are no words of gift such as "I give, devise and bequeath" following the words "upon the death of such longest liver." The words that follow those just quoted are "then to the use of the then surviving children." The general rule is, where the gift is found merely in the direction to pay and divide, that the class must be ascertained at the time of distribution, and this general rule would seem to be applicable here.

That the class was not to be ascertained in the lifetime of testatrix, that is, at the death of Thomas, is clear. Where a generic term is used to describe the beneficiaries, only those who answer the description at the time of the death of testatrix are included, for survivorship at the death of testatrix is an implied condition annexed to every gift. This principle is somewhat modified by the statutes relating to lapsed and void legacies and devises, but we are not concerned with that phase of the subject here, because there were no deaths, for none of the children of Thomas died between the execution of the will and the death of testatrix.

The words "excepting always his son Henry Hollingsworth and his descendants and representatives" do not shed any light on the subject. What testatrix evidently meant was that Henry, if living at the termination of the trust, should not participate in the distribution of the corpus, and that if he was not living at that time none of his lineal issue should take, and out of an abundance of caution, she further provided that if Henry was not living when the trust terminated, his representatives should not take. Whether the word "representatives" was used synonymously with "descendants," or whether she was referring to an executor or administrator, is not so clear. It is clear, however, that Henry and his lineal descendants were expressly excluded from any participation in the estate.

In Leech's Estate, 274 Pa. 369, testator created a trust of the residue of his estate. He directed that one-third of the income should be paid to his wife for life and that the rest should be paid to his three children during their lives and to the issue of such of them as might die leaving issue. He further directed: "After these trusts have been fully executed then the said property shall descend and go as my estate according to the then existing laws of Pennsylvania." It was held that the class was to be ascertained when the trust terminated and not at the death of testator. Justice Schaffer, in delivering the opinion of the Supreme Court, at page 374, said: "Whatever testator's idea may have been as to who would be living when it [the life estate] came to an end, it is inconceivable that he could have intended that the property should vest in his children, which is the contention made by appellants, because he knew, and had so provided, that, at the time of vesting, they must be dead." Applying the reasoning of Justice Schaffer, it is reasonable to construe the language of this will in such a way as to attribute to testatrix an intention that she did not want the remainder estate to vest at the time of her death in the three *cestuis que trustent* and Caroline. If it was not her intention to vest it in the three *cestuis que trustent*, it necessarily follows that

there was no intention to vest it in Caroline at the death of testatrix. Had Caroline survived the termination of the trust, she would have been entitled, but she did not. See, also, Hildebrant's Estate, 268 Pa. 132, and Gerber's Estate, 196 Pa. 366.

In Gerber's Estate, 196 Pa. 366, testator created a trust for his son and one of his grandsons for life and provided as follows: "then after the death of all my grandchildren and the youngest grandchild living of my son . . . has become 22 years of age, then all my real estate shall be sold . . . and the proceeds . . . to be divided among the lawful heirs of my son." It was held that the lawful heirs of the son were to be ascertained not at the death of the son but at the time when the trust terminated; and, consequently, the rule against perpetuities was violated.

The Auditing Judge rules that the next of kin of Thomas are to be ascertained at the termination of the trust and that the fifteen nephews and nieces of Thomas, who were living at that time, are entitled to the corpus of the estate.

When Langdon Cheves Stewardson died, he was entitled to receive all of the income of the trust estate. As already stated, upon the adjudication of the first account of the trustee, it was held that the three children had estates *pur autre vie* in the income. The petition sets forth in detail how Langdon Cheves Stewardson became entitled after the death of the other two *cestuis que trustent* to their shares of the income in the estate. It will suffice to refer to the petition for distribution for any further information on this subject. . . .

*Charles C. Perkins* and *Joseph Carson*, for exceptants.

*Harold Evans, Walter Penn Shipley* and *W. W. Montgomery*, contra.

GEST, J., December 5, 1931.—Following the life estates of certain children of Thomas, a brother of the testator, the remainder is given upon the death of the longest liver of them, "then to the use of the then surviving children of the aforesaid daughters and of their brother Langdon in equal shares *per capita* and in default of any such surviving children then to the use of the next of kin of the blood of said brother Thomas, excepting always his son, Henry Hollingsworth, and his descendants and representatives."

The life tenants died without leaving children, and the Auditing Judge, in a well-considered adjudication, held that the remainder over was to a class which could not be ascertained until the death of the survivor of the life tenants, and, accordingly, distributed the trust estate among fifteen great-nieces and great-nephews of Thomas Stewardson as his next of kin of his blood. The exceptants are the personal representatives of the four deceased children of Thomas Stewardson, being all of them except Henry Hollingsworth, who was expressly excluded.

In our opinion, this construction of the will follows from its plain terms and is amply supported by the decisions cited in the adjudication, to which may be added Philadelphia Trust, etc., Company's Appeal, 108 Pa. 311.

The use of the words "next of kin of the blood of said brother Thomas" is significant. One who is of the blood of another, means one who has any, however small a portion, of the same blood derived from a common ancestor: Baker *v.* Chalfant, 5 Whart. 477; Miller *v.* Grimes, 262 Pa. 226. The next of kin of the blood of Thomas are not restricted to Thomas's children, as is urged by the exceptants. What the testatrix obviously intended was to confine the inheritance to persons of the Stewardson blood, and the phrase used would exclude, for example, surviving spouses and adopted children who might

otherwise be included as next of kin without this qualification. The testatrix was fully cognizant of the distinction, for, in other paragraphs of her will, she refers to Virginia, the adopted daughter of Mary Hartshorne, a niece of the testatrix, and provides that she shall, for all purposes of the will, be considered as the "actual child of Mary" and again "as the daughter by consanguinity of the said Mary." Had Virginia survived Langdon C. Stewardson, the longest liver of the life tenants, she would probably be included, for the purposes of distribution, among the next of kin of the blood, but she, however, predeceased Langdon.

The able argument of the exceptants has not convinced us of any error in the adjudication, and, consequently, the exceptions are dismissed and the adjudication is confirmed absolutely.